UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Seth Bader

    v.                                                          Civil No. 06-cv-137-JM
                                                            Opinion No.: 2008 DNH 26
William Wren, Commissioner
of the New Hampshire
Department of Corrections

**O R D E R**

In this action brought pursuant to 42 U.S.C. § 1983, plaintiff Seth Bader, who is incarcerated at the New Hampshire State Prison ("NHSP"), challenges a rehabilitation program offered there called the "Alternatives to Violence Program" ("AVP"). Plaintiff claims the AVP infringes his First Amendment rights because it violates the Establishment Clause by improperly endorsing religion as part of the rehabilitative process it teaches. Before the court are cross motions for summary judgment. See Document no. 8 (defendant's motion) and document no. 11 (plaintiff's motion). For the reasons set forth below, defendant's motion is granted and plaintiff's motion is denied.

Background[1]

Plaintiff was convicted of first-degree murder and sentenced to life imprisonment without the possibility of parole. He is serving his sentence at the NHSP. As part of his classification review, on January 1, 2006, NHSP officials recommended plaintiff participate in the AVP. He refuses to do so, because, he asserts, its message of "Transforming Power" implicates religion.

AVP is a program offered at the NHSP to inmates several times a year and run by volunteers, who are either from outside

---

[1] A motion for summary judgment must be accompanied by a statement of material facts supported by appropriate record citations, and any opposition must state which facts are disputed with similarly appropriate record citations. See United States District Court for the District of New Hampshire Local Rule ("LR") 7.2(b)(1) and (2); Fed. R. Civ. P. 56(c). The record that is relied upon to demonstrate that there are no genuine issues of fact must contain admissible evidence. Fed. R. Civ. P. 56(e). Here, plaintiff neglected to authenticate any of the documents appended to his brief in support of his argument, rendering those documents that are not self-authenticating inadmissible, and the citations to them, therefore, inappropriate. See id.; see also Fed. R. Evid. 901 & 902. The fact that some exhibits cannot be considered does not affect the outcome here, however, because the critical documents pertaining to the AVP are either properly authenticated by defendant, or self-authenticating. Also, plaintiff concedes there are no contested issues of material fact. Defendant's statement of facts is deemed admitted and the court will proceed based on those facts. See LR 7.2(b)(2); see also Marin-Colon v. Dep't of Homeland Sec., __ F.3d __, No. 06-2468, slip op. at 5-6 (1st Cir. Dec. 18, 2007) (enforcing local rule governing evidence submitted in support of summary judgment).

2

the prison or inmates who previously participated in the program. See Def.'s Mem. in Sup. of Summ. J. Ex. A ("Def. Ex."), ¶¶ 1, 7 & 8 (Aff. of Charles Oropallo); see also Ex. D, ¶¶ 3 & 4 (Aff. of Denny Loughlin).  The volunteers must be trained to become a facilitator or a group leader, and are one or the other depending on the level of training completed.  The program is run as a workshop, spanning several days.  The workshops are held at the NHSP.  Besides providing space for the workshops, neither the NHSP nor the State of New Hampshire supports, sponsors, advises, funds, or in any other way facilitates, the AVP.  See Ex. A, ¶ 7; Ex. D, ¶¶ 5 & 7.

   AVP was conceived in the 1970s as a means of teaching incarcerated inmates how to turn away from violence.  Ex. A, ¶¶ 2 & 3.  Its origins are rooted in the Quaker idea of the power within each individual to lead nonviolent lives through self affirmation and respect for others; however, AVP is not built upon nor does it advance any religion.  See id., ¶ 3; see also Ex. B (6/1/2007 excerpt from AVP website, http://avpusa.org/home.htm).  The AVP mission is:

> a multicultural organization of volunteers
> offering experiential workshops that empower
> individuals to lead nonviolent lives through
> affirmation, respect for all, community building

>     cooperation and trust.  Our fundamental belief
>     is that there is a power for peace and good in
>     everyone, and that this power has the ability for
>     people to positively transform themselves and the
>     world.  AVP builds on a spiritual base of respect
>     and caring for self and others, working both in
>     prisons and with groups in the community.

Ex. C at 3 (AVP Participant Workbook).  A central aspect of the program is that participation be voluntary, because the goal of personal growth cannot be accomplished unless the individual wants to grow.  See id.  Role-playing is used to teach participants new ways of dealing with conflict in a nonviolent manner.  The program follows manuals which were developed by participants and which are regularly updated with new ideas.  See id. at 4.  The manuals are frequently updated, to reflect the program's grass roots approach that resists any type of hierarchy or authoritative power.  See id.; see also Ex. E. at 3.  "[AVP] is about community, about acknowledging and encouraging the potential of all of us to grow and develop, and about working together by agreement and without coercion."  Ex. C at 4.

The AVP Participant Workbook explains the "true source of nonviolence is spiritual power.  We call this Transforming Power."  Id. at 4.  Transforming power is described as "a spiritual power [] inherent in humans and . . . found in all

religious beliefs including Christian, Islamic, Jewish, Native American, Hindu, and Buddhist." Id. at 4. Participants, however, are not guided to follow any particular spiritual path, but rather to find within themselves the strength to change their behavior away from violence. See id. at 4, 10 & 14 (emphasizing personal spiritual paths and facilitating self-awareness and control); see also Ex. B at 2; Ex. E at 3. The AVP teaches that Transforming Power "is the power we all have to change (transform) what might be a violent situation into a non-violent (win/win) solution. The basis of Transforming Power is an appreciation of one's own self-worth and a caring attitude toward all other people. This requires an ability to separate out feelings toward someone's behavior from feelings for the person." Ex. C at 16.

The Workbook provides a detailed explanation of how to tap one's Transforming Power, by setting forth the following twelve "Guides to Transforming Power":

1. Seek to resolve conflicts by **reaching common ground**.

2. **Reach for that something in others** that seeks to do good for self and others.

3. **Listen**. Everyone has made a journey. Try to understand where the other

      person is coming from before you make up your mind.

4. **Base your position on truth**.  Since people tend to seek truth, no position based on falsehood can long prevail.

5. **Be ready to revise your position** if you discover it is not fair.

6. When you are clear about your position, **expect to experience great inward power to act** on it.  A response that relies on this power will be courageous and without hostility.

7. Do not expect that this response will automatically ward off danger.  If you cannot avoid risk, **risk being creative rather than violent**.

8. **Surprise and humor** may help transform.

9. Learn to **trust you inner sense** of when to act and when to withdraw.

10. Work towards new ways of overcoming injustice.  **Be willing to suffer** suspicion, hostility, rejection, even persecution if necessary.

11. **Be patient and persistent** in the continuing search for justice.

12. **Help build 'community'** based on honesty, respect and caring.

Ex. C at 14 (emphasis in original).  According to the AVP materials, Transforming Power has a unique meaning for each individual.  The workshops are designed to help participants find

their own Transforming Power "to change people or situations by a caring attitude expressed through persistent creative acts." Id. at 15; see also Ex. A at ¶ 5.

The NHSP recommends the AVP to inmates who have a history of violence, as a means of helping them learn better ways of managing stress. Ex. D. at ¶¶ 8 & 9. The program is recommended because it "has proven itself over the years to be an effective and worthwhile program. Inmates who have attended the program generally report that it is a positive and beneficial experience." Id. ¶ 9. The NHSP recommended that plaintiff participate in AVP but, as stated above, he has not done so. He also has not yet, at the time of filing, suffered any adverse consequences from that refusal. Plaintiff currently is classified as "C-3," which is a mid tier security ranking, and remains housed in the NHSP's Hancock Building.

## Discussion

### 1. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (citing authority). The burden of showing an absence of any genuine issues of material fact lies with the moving party. See id. The facts must be viewed in the light most favorable to the non-moving party, construing all reasonable inferences in his favor. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000). "The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists." Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (citing Suarez, 229 F.3d at 53). Here, plaintiff concedes there are no genuine issues of material fact and that only legal questions remain in dispute. See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., ¶¶ 2, 4 & 5 (doc. no. 10.1) ("Pl.'s Mem.").[2] Accordingly, summary judgment is the appropriate method to resolve this matter. See Quinn, 325 F.3d at 28.

---

[2] Plaintiff has crossed moved for summary judgment and filed the same Memorandum of Law in support of his Motion for Summary Judgment as he filed in opposition to Defendant's Motion for Summary Judgment. Cf. Documents no. 10.1 & no. 11.1. The Memorandum of Law shall be referred to hereinafter as "Pl.'s Mem."

### 2.   **The Establishment Clause Claim**

Plaintiff contends the NHSP's recommendation that he participate in the AVP violates the Establishment Clause of the First Amendment because (1) the AVP program is religious, and (2) he is being coerced to participate in the program, because his refusal may result in adverse administrative consequences such as higher security housing, limited work opportunities, or other institutional restrictions.[3]  Defendant's consideration of his participation in the AVP, he asserts, constitutes excessive entanglement with religion in violation of the Establishment Clause.  <u>See</u> Pl.'s Mem. at ¶¶ 36 & 37.  Defendant responds that the AVP is not a religious program and, even if it were, there is no evidence that the State's involvement has the principal or primary effect of advancing religion.  Defendant also contends that plaintiff is not being coerced to attend AVP simply because it was recommended on his classification review form.  As explained more fully below, I am not persuaded by plaintiff's

---

[3]Plaintiff also contends that his refusal to participate in AVP could adversely affect his eligibility for parole; however, he was sentenced to life without the possibility for parole.  This issue, therefore, is not now, nor could it ever become, ripe for review and will not be considered as a basis for the relief sought.  <u>See</u> <u>Duquette v. Dolecal</u>, No. 04-281-SM, 2005 WL 2093032 at *4 (D.N.H. Aug. 29, 2005) (discussing ripeness doctrine).

argument and find, instead, that defendant more accurately depicts the AVP and the implications for plaintiff if he fails to complete the program.

The Establishment Clause of the First Amendment proscribes governmental involvement in religion, either to advance or inhibit its practice in any form. See U.S. Const., amend. I (providing "Congress shall make no law respecting an establishment of religion"). It is made applicable to the states through the Fourteenth Amendment. Lee v. Weisman, 505 U.S. 577, 580 (1992). Its essential purpose is to "prohibit[] government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.'" Allegheny County v. Greater Pittsburgh ACLU, 492 U.S. 573, 594 (1989) (quoting Lynch v. Donnelly, 465 U.S. 668, 687 (1984) (O'Connor, J., concurring)). In other words, the government cannot endorse or suppress religion, however tangentially. See Allegheny County, 492 U.S. at 591–95 (reviewing the contours of the Establishment Clause's limit on governmental action).

Challenges to governmental action that allegedly violate the Establishment Clause, as plaintiff alleges here, require the

Court to make fact-specific determinations.  See id. at 597 ("Every government practice must be judged in its unique circumstances to determine whether it [endorses] religion." (internal quote omitted)); see also Lee, 505 U.S. at 597 (explaining that Establishment Clause jurisprudence "remains a delicate and fact-sensitive one").  While the proscription has been difficult to translate into "concrete rules and consistent doctrine," DeStefano v. Emergency Hous. Group, Inc., 247 F.3d 397, 405 (2d Cir. 2001), the Supreme Court has annunciated a three-part test to determine whether the challenged governmental action -- here, the NHSP's recommendation of AVP -- violates the Establishment Clause:  (1) does it have a secular purpose?; (2) is its principal or primary effect one that neither advances nor inhibits religion?; (3) does the act avoid excessive governmental entanglement with religion?  See Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971); see also Zelman v. Simmons-Harris, 536 U.S. 639, 668 (2002) (reaffirming the Lemon test as a "central tool in our analysis of cases in this area") (O'Connor, J., concurring)).

     The second and third questions have been fused into one, because the same evidence often answers both questions.  See Zelman, 536 U.S. at 668-69 ("the degree of entanglement has

implications for whether a statue advances or inhibits religion"); Agostini v. Felton, 521 U.S. 203, 232 (1997) (combining excessive entanglement into the effects inquiry). The analysis, therefore, assesses whether the challenged governmental act has a secular purpose and whether it affects religion in some way.[4]  If the challenged act fails any part of this test, then it violates the Establishment Clause. See Lemon, 403 U.S. at 613-14.

Based on the facts presented here, my analysis begins, and ends, with the second question:  whether or not the challenged governmental act's principal or primary effect is to advance or inhibit religion. Here, this second query, the "effects test," subsumes the question of whether the NHSP's recommendation of the AVP to plaintiff coerces him to participate in religion, because, if it does, it necessarily also would have the principal or primary effect of advancing religion. See e.g. Lee, 505 U.S. at

---

[4]The effects test is further broken down into subparts that ask whether the action or program results in governmental indoctrination, determines its recipients by reference to religion, or creates excessive entanglement with religion. See DeStefano, 247 F.3d at 406 (citing Mitchell v. Helms, 530 U.S. 793, 120 S.Ct. 2530, 2559 (2000) (plurality opinion) and Agostini, 521. U.S. at 234); see also Kerr, 95 F.3d at 477-79 (canvassing cases stating various tests depending on what the challenged act is).

604 ("Government pressure to participate in a religious activity is an obvious indication that the government is endorsing or promoting religion." (Blackmun, J., concurring)); Gray v. Johnson, 436 F. Supp. 2d 795, 799 n.4 (W.D. Va. 2006) (explaining how the coercion and endorsement tests fall within the second prong of the Lemon paradigm); DeStefano, 247 F.3d at 411-13 (citing authority to explain the "fulcrum" of the Establishment Clause analysis is whether the government, either directly or indirectly, exerts pressure that "interferes with an individual's 'real choice' about whether to participate in worship or prayer." (quoting Lee, 505 U.S. at 592, 595)).  In the prison context, this means that the State cannot require an inmate to participate in a rehabilitation program that is religious, because that requirement would constitute a governmental act that would have the effect of advancing religion.  See e.g. Catala v. Comm'r, N.H. Dep't of Corrections, No. 05-106-JD, 2005 WL 3133036, at *1 (D.N.H. Nov. 22, 2005) (citing authority); see also Edmonson v. Curry, No. Civ. 05-cv-445-JD, 2006 WL 1134913, at *5-6 (D.N.H. Apr. 3, 2006) (finding state-run sexual offender program that posted scriptural passages in public places subjects participants to a particular religion in violation of the Establishment

Clause); Armstrong v. Beauclair, No. 06-49-S-EJL, 2007 WL 1381790, at *5 (D. Idaho Mar. 29, 2007) ("The law has been clear for many years that an inmate may not be forced to participate in a religiously-oriented prison program."); Kerr v. Farrey, 95 F.3d 472, 480 (7th Cir. 1996) (conditioning parole eligibility on attendance at NA constitutes coerced religious involvement).

Plaintiff devotes the majority of his brief to arguing that the AVP is religious. See Pl.'s Mem., ¶¶ 11-25 & 30. Plaintiff contends that the AVP's reliance on the concept of Transforming Power is analogous to Alcoholics Anonymous'("AA") and Narcotics Anonymous' ("NA") invocation of God in their 12-step program, and that the AVP follows Quaker principles and methodology. He submits that he is being coerced into participating, because his refusal to do so will adversely impact his custody status and attendant privileges. Plaintiff's argument fails, however, because I find that the AVP is not religious, which means its primary effect cannot be to advance religion. Plaintiff, therefore, is precluded from invoking the protections of the Establishment Clause under the circumstances presented here.

First, while it is well-settled that requiring attendance at AA or NA as part of a prison sentence or rehabilitation program

violates the Establishment Clause, see Yates v. Cunningham, 70 F. Supp. 2d 47, 49 n.2 (D.N.H. 1999) (citing authority), nothing in the AVP literature parallels the 12-step program of AA or NA. There is no reference in AVP to a higher being, outside of the participant, who's called upon to help redeem the individual and which could be understood as invoking religion.[5]  Cf. e.g.

---

[5] Plaintiff argues the AVP is religious because it teaches "'sincere . . . beliefs which are based upon a power or being, or upon a faith, to which all else is subordinated or upon which all else is ultimately dependent and which occupies in the life of its possessor a place parallel to that filled by . . . God.'" Pl.'s Mem. at 7 (quoting United States v. Seeger, 380 U.S. 163, 176 (1965)).  Plaintiff's quote from Seeger is misleading and incomplete.  In context, the quote does not advance his argument. In Seeger the Court was construing the conscientious objector statute, 50 U.S.C. App. §456(j) (1958 ed.), as broadly as possible to clarify that Congress intended to include all people whose personal beliefs led them to object to combatant military service, and not to limit the exemption to those objectors who followed more traditional or orthodox religions.  The complete quote explains that the exemption includes "all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent.  The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition."  Id. at 176.  The Court in Seeger was distinguishing between "religious beliefs," which were protected by the statute, and political, social or philosophical beliefs, which were not, and concluded "merely a personal moral code," could not support a conscientious objector exemption.  See id. at 178-79.  The Court's holding is inapposite to the facts at issue here, and may not reflect its current definition of religion. See United States v. Meyers, 906 F.Supp. 1494, 1499-1500 (D.Wyo. 1995) (discussing Supreme Court's efforts to define religion and

15

Armstrong, 2007 WL 1381790 at *5 (finding NA program based on submission to a higher power was religious and citing authority for same); DeStefano, 247 F.3d at 406-07 (describing religious references in AA program and finding probation conditioned on participation in AA violates the Establishment Clause); Kerr, 95 F.3d at 480 (holding twelve-step program's reference to "God, as we understood Him" is clearly based on a monotheistic idea of a single God or Supreme Being).  Unlike those programs, the AVP's identification of "Transforming Power" is much closer to "the non-religious idea of willpower within the individual." Id. Nothing in the AVP literature supports the conclusion that Transforming Power is a religion, which has been defined "as a 'system of faith and worship usu[ally] involving belief in a supreme being and usu[ally] containing a moral or ethical code; esp[ecially], such a system recognized and practiced by a particular church, sect, or denomination. . ..'" Armstrong, 2007 WL 1381790 at *5 (quoting Black's Law Dictionary).

    Second, though AVP's core principal of Transforming Power is rooted in Quaker philosophy, nothing about the program promotes,

---

construe the First Amendment's religion clauses), aff'd 95 F.3d 1475 (10th Cir. 1996).

advances, or even subtly endorses the Quaker religion.  The guides to Transforming Power do not allude to, invoke, or call upon any religious books, scriptures, passages or moral code, Quaker or otherwise.  Simply because the AVP model may parallel some of the Quaker methodology or meeting style does not mean the program follows that religion, adopts its tenets, or encourages or endorses the religious beliefs of Quakers in any way.

The AVP format does not implement any cognizable religious practice or methodology.  See e.g., Meyers, 906 F. Supp. at 1500-03 (identifying common characteristics of any faith).  The program is explicitly individualistic, relying primarily on the participant's ability to change himself.  AVP teaches that Transforming Power has a unique meaning to each participant, based upon that individual's perspective and experience.  It could mean the same thing, or diametrically opposite things, to a Jewish, Christian, Muslim, Buddhist or atheist participant.  While the program teaches an ideology of the power within each individual to transform his or her perspective, it seeks to accomplish this without reliance on, reference to, or invocation of, any theology.  Transforming Power, as utilized in the AVP, is not part of any religion and cannot be understood as religious.

<u>See</u> <u>id.</u> at 1504 (differentiating "purely personal, political, ideological or secular beliefs" that do not fall within the protections of the First Amendment).

 Because I find the AVP is a secular rehabilitation program, the NHSP's recommendation that plaintiff participate in it simply cannot constitute coercive pressure advancing a religion, or excessive governmental entanglement in religion, to support a finding that its primary effect is to advance religion in violation of the Establishment Clause.  It is undisputed that the program has the primary purpose of helping inmates learn how to turn away from violence and to seek alternative means of resolving conflict or managing stress.  It is also undisputed that the program's goal is to enable participants to find the power of self-control to avoid violence in the future.  Nothing in the record suggests that this was a "sham secular purpose." <u>Gray</u>, 436 F. Supp. 2d at 800 (quoting <u>Santa Fe Indep. Sch. Dist. v. Doe</u>, 530 U.S. 290, 308 (2000)).  The record demonstrates that defendant's recommendation of AVP does not interfere with plaintiff's free will or individual conscience to choose whether or not to worship, and it cannot be understood as defendant endorsing one religion over another, or some religion over no

religion.  The AVP recommendation, therefore, does not violate the Establishment Clause.

The circumstances presented here exemplify how:

> The First Amendment does not prohibit practices which by any realistic measure create none of the dangers which it is designed to prevent and which do not so directly or substantially involve the state in religious exercises or in the favoring of religion as to have meaningful and practical impact.  It is of course true that great consequences can grow from small beginnings, but the measure of constitutional adjudication is the ability and willingness to distinguish between real threat and mere shadow.

Lee, 505 U.S. at 598 (quoting School Dist. v. Schempp, 374 U.S. 203, 308 (1963) (Goldberg, J., concurring)).  The undisputed record demonstrates that plaintiff's rights under the Establishment Clause are not violated by the NHSP's recommendation that he participate in the AVP.  Summary judgment, therefore, is awarded to defendant.

## Conclusion

For the reasons set forth above, defendant's motion for summary judgment (document no. 8) is granted, and plaintiff's motion for summary judgment (document no. 11) is denied.  The Clerk is ordered to close the case.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge


Date:   January 30, 2008

cc:     Michael J. Sheehan, Esq.
        Deborah B. Weissbard, Esq.